IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BARBARA HENRY,**

        **Plaintiff,**

**v.**                            //    CIVIL ACTION NO. 1:08CV123
                                       (Judge Keeley)

**UBC PRODUCT SUPPORT CENTER, INC.,
d/b/a UNITED BIOSOURCE CORPORATION,
UNITED BIOSOURCE CORPORATION,
CHARLES CLARK, DEBBIE LEE,
CHARLOTTE STURBA, AMY RENNER and
STEPHANIE VAN NORMAN,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court are a Motion to Amend the Complaint and a Motion to Remand, both filed by the plaintiff, Barbara Henry ("Henry"). For the reasons that follow, the Court **GRANTS** the motion to amend and the motion to remand, and **REMANDS** the case to the Circuit Court of Monongalia County, West Virginia.

### I. FACTS AND PROCEDURAL HISTORY

Henry filed a Complaint in the Circuit Court of Monongalia County, West Virginia, on January 25, 2008, alleging that, from May 30, 2000 until June 15, 2007, she worked for defendants UBC Product Support Center, Inc., d/b/a United BioSource Corporation, and United BioSource Corporation (together "UBC"), first as a "Data Entry Specialist" and then as a "Mail Coordinator." While employed at UBC, Henry alleges that, based on her age and her and her

husband's disabilities, she became the object of hostility by UBC's management.

Specifically, Henry, who was 61 years old when her employment with UBC ended, alleges that the management of UBC, including defendants Charles Clark, Debbie Lee, Charlotte Sturba, Amy Renner, and Stephanie Van Norman (the "Removing Defendants"), all of whom were in their thirties at the time, displayed hostility to Henry because of her age and disabilities. She alleges that she ultimately resigned her position after frequent and intense harassment culminated in members of the management insisting that Henry sign a warning document that included the threat of termination. Henry alleges that she reasonably believed she had no other choice than to quit her position, after which UBC replaced her with a much younger man.

Henry's Complaint alleges four causes of action. In her first and second counts, she asserts age and disability discrimination under the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1, et seq. In her third count, Henry alleges common law wrongful discharge under Harless v. First National Bank of Fairmont, 246 S.E.2d 270, 275 (1978). In this count, she asserts that both she and her husband were disabled and covered by UBC's health insurance, and that the defendants harassed and

constructively discharged her in part because of (a) her disability and insurance status, and (b) her husband's disability and insurance status. Finally, in her fourth count, Henry alleges retaliation under the WVHRA, W. Va. Code § 5-11-9.

On June 9, 2008, the Removing Defendants removed the case to federal court. In their notice of removal, they asserted that this Court has original jurisdiction over Count Three of the Complaint because the UBC health insurance plan covering both Henry and her husband was part of an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Section 510 of ERISA prohibits discharge of, or discrimination against, a plan participant "for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Section 502(a)(3) provides a cause of action to such a plan participant, and Section 502(e)(1) gives federal courts exclusive jurisdiction over such claims.

The Removing Defendants alleged that, although not pled as such, Henry's claim in Count Three of the Complaint asserts a cause of action under Section 510 of ERISA. Specifically, because she contends she was discriminated against, in part, due to her and her husbands's disabilities and their insurance status, Henry is, in

3

effect, claiming that she, as an ERISA plan participant, was discriminated against for exercising a right to which she was entitled under her employee benefit plan. Thus, the Removing Defendants contended that Henry's claim is preempted by Section 510 of ERISA, and that this Court has subject matter jurisdiction over this claim under 28 U.S.C. § 1331, which provides federal courts with original jurisdiction over claims arising under federal law.

The Removing Defendants further asserted that the "complete preemption" exception to the well-pleaded complaint rule makes removal appropriate in this case, even though Henry did not explicitly allege an ERISA claim. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 67 (1978) ("Accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, 'arise[s] under the ... laws ... of the United States,' 28 U.S.C. § 1331, and is removable to federal court by the defendants, 28 U.S.C. § 1441(b).").

Finally, the Removing Defendants maintained that the Court has jurisdiction over the remaining counts of the Complaint pursuant to 28 U.S.C. § 1367, which grants federal courts supplemental jurisdiction over "all other claims that are so related to claims

in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Alternatively, the Removing Defendants argued that the Court could retain jurisdiction over the remaining claims under 28 U.S.C. § 1441. That statute provides that

> [w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein . . . .

Thus, the Removing Defendants urged the Court to retain supplemental jurisdiction over all of Henry's claims.

On August 29, 2008, the Court conducted a hearing at which it set a deadline for Henry to file any motions to amend the pleadings or to remand. On September 8, 2008, Henry timely filed both a motion to amend the Complaint and a motion to remand the case to the Circuit Court of Monongalia County. UBC and the Removing Defendants responded to both motions on September 22, 2008. Both issues are therefore ripe for review.

## II. LEGAL ANALYSIS

Henry argues that Count Three of her Original Complaint does not, and was never intended to, assert a claim under ERISA or to allege that UBC or the Removing Defendants were motivated to deny

5

her or her husband her ERISA benefits.  Rather, she intended to allege that the defendants discriminated against her in part because of a characteristic of her spouse.  Henry admits that Count Three could have been more artfully drafted to clarify her intent, and asks the Court to allow her to amend her Complaint to make such clarification by eliminating Count Three altogether.  She argues that permitting her to amend her Complaint would clarify and simplify her allegations.

UBC and the Removing Defendants urge the Court to deny Henry's motion to amend, arguing that such motions are inappropriate when the reason for the amendment is to defeat the jurisdictional grounds for removal.  Alternatively, they argue that because the Court had jurisdiction over Count III at the time of removal, the Court should retain jurisdiction even if it grants Henry's motion to amend.

### A.   ERISA Preemption

Initially, this Court must determine whether it has subject matter jurisdiction over Count Three of the original Complaint, as alleged by UBC and the Removing Defendants, and thus whether removal was appropriate.  See 28 U.S.C. § 1447(c) (requiring remand of any case for which the court lacks subject matter jurisdiction).

In Count Three, Henry states, in relevant part:

48. She and her husband were disabled and were both covered by UBC's health insurance;

49. Both she and her husband required significant medical care at times material to this lawsuit; and

50. Defendants constructively discharged and harassed her in part because of (a) her disability and insurance status and (b) her husband's disability and insurance status.

Although Henry raises these allegations in the context of asserting a West Virginia common law claim under <u>Harless v. First National Bank of Fairmont</u>, 246 S.E.2d at 275, UBC argues that the allegations also state a claim under § 510 of ERISA.

Section 510 of ERISA states that:

It shall be unlawful for any person to discharge . . . or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."

29 U.S.C. § 1140. A "participant" is "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." <u>Id.</u> at § 1002(7). Employee benefit plans include health insurance plans. <u>Id.</u> at §§ 1002(1) & (3). The defendants contend, and Henry does not

dispute, that Henry was an employee who was eligible to receive health benefits under UBC's employee benefit plan.

Count Three of Henry's original Complaint alleges that she was discriminated against, and ultimately constructively discharged, in part because she and her husband each had disabilities and each required significant medical care. Although not explicitly stated, the clear implication of this claim was that she and her husband each used UBC's health insurance plan to cover their significant medical expenses, and that their frequent use of that plan was a motivating factor for the defendants's discriminatory acts. Thus, the claim alleges, by implication, that Henry, as a plan participant, was discriminated against for exercising a right to which she was entitled under her health insurance plan. See 29 U.S.C. § 1140. Accordingly, the Court agrees with UBC that Count Three states a claim that is cognizable under ERISA.

The defendants next contend that ERISA creates complete federal preemption for claims arising under § 510. Unlike "conflict" or "ordinary" preemption, complete preemption is a "jurisdictional doctrine," that "transform[s] the plaintiff's state-law claims into federal claims." Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005) (citing Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 476 (1998)). Thus, "complete preemption"

8

creates "a narrow exception to the well-pleaded complaint rule," because "since the complaint is then understood to state a federal question, the well-pleaded complaint rule is satisfied, thereby justifying removal under § 1441(b)." Id. at 339-40, 441.

Although very few areas of state law are completely preempted, sections 502 and 514 of ERISA create complete federal preemption for violations of § 510. See 29 U.S.C. § 1132(e)(1); Lontz, 413 F.3d at 441 (noting that the Supreme Court has found complete preemption in only three statutes, including ERISA). Section 502 provides that a plan participant, such as Henry, may bring a civil action to enjoin any act or practice that violates any provision of subchapter 1 of ERISA, which includes § 510, or to obtain equitable relief to redress violations thereof. See id. at 1132(a)(3). The statute then provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter . . . ." Id. at 1132(e)(1). Furthermore, section 514(a) of ERISA provides, in relevant part, that

> the provisions of [subchapter I] . . . of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).

In <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 140 (1990), the United States Supreme Court confirmed that ERISA completely preempts any claim under state common law that an "employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund . . . ." Accordingly, based on the plain reading of the statute and on the Supreme Court's interpretation, Henry's claim as stated in Count Three of her original Complaint is completely preempted by ERISA, and this Court has original, and sole, jurisdiction over it.

**B.    Motion to Amend Complaint**

Because subject matter jurisdiction over Count Three existed at the time of removal, removal was proper and the Court therefore has jurisdiction to consider Henry's motion to amend her Complaint.

**1.    Legal Standards**

Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been filed in a case, "[a] party may amend the party's pleading . . . by leave of the court . . . and leave shall be freely given when justice so requires." The Fourth Circuit has held that "[a] motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the

amendment would be futile." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) (citing HCMF Corp. v. Allen, 238 F.3d 273, 276-77 (4th Cir. 2001).

Despite this liberal amendment policy, the defendants urge the Court to deny Henry's motion, arguing that a plaintiff cannot amend a complaint solely to deprive a court of properly conferred subject-matter jurisdiction in order to secure remand of the case. Rather, they argue, jurisdiction must be determined at the time of removal, and subsequent amendments should not form a basis for remand. For this proposition, they rely on Brown v. Eastern States Corporation, 181 F.2d 26, 28-29 (4th Cir. 1950), which held that, where an original complaint asserted a claim under federal law and was therefore properly removed, "the fact that plaintiff subsequently amended his compliant in an attempt to eliminate the federal question did not make remand proper."

Brown has since been distinguished and, while not directly overruled, its holding has been severely undermined by several later decisions of the Supreme Court of the United States. In United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), for example, the Supreme Court discussed the doctrine of pendant jurisdiction, concluding that federal courts have discretion whether to keep claims arising under state law after the federal

11

claims have been dismissed, and, in making that determination, should consider the values of judicial economy, convenience, fairness, and comity in exercising that discretion.  Id. at 726-27.

Later, in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 351 (1988), the Court broadened the reach of Gibbs, holding that a district court has discretion to remand removed state law claims after the federal claim forming the jurisdictional basis has been removed.  In Cohill, the plaintiffs's original complaint alleged both state and federal claims.  Id. at 345-46.  The defendants removed the case to federal court with no objection.  Id. at 346.  Six months later, the plaintiffs filed a motion to amend their complaint to eliminate the sole federal-law claim, and moved to remand the case to state court.  Id.  The district court granted both motions and remanded the case.  Id.

On appeal, after a split en banc decision by the Third Circuit Court of Appeals, the Supreme Court upheld the district court's ruling,  stating that "[w]hen the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court has a powerful reason to chose not to continue to exercise jurisdiction."  Id. at 619.  The Supreme Court found that district courts in this position should consider the factors stated

in <u>Gibbs</u>, and that remand may be the most appropriate decision. <u>Id.</u> at 619-20.

In response to the defendants's argument that "giving district courts discretion to remand cases involving pendent state-law claims will allow plaintiffs to secure a state forum through the use of manipulative tactics," the Supreme Court found that, while district courts should consider whether a plaintiff has engaged in manipulative tactics when it decides whether to remand a case, this is but one of several factors to be balanced in deciding whether to exercise pendant jurisdiction. <u>Id.</u> at 357.

More recently, in a case factually on all-fours with the instant case, the Fourth Circuit, in <u>Harless v. CSX Hotels, Incorporated</u>, 389 F.3d 444, 448 (4th Cir. 2004), relied on <u>Gibbs</u> and <u>Cohill</u> to hold that a district court has discretion to allow a plaintiff to amend a complaint to remove a federal claim and then to remand the case. In <u>CSX Hotels</u>, the plaintiff filed her initial complaint in state court, believing that she had alleged only state law claims. <u>Id.</u> at 446. The defendant removed to federal court, asserting that some of her claims were preempted by the federal Labor Management Relations Act. <u>Id.</u> The plaintiff then filed several motions to amend her complaint to eliminate the federal cause of action and filed a motion to remand. <u>Id.</u> at 446-47. The

district court granted the motions to amend, and, after all of the claims that could have been federally preempted were removed, granted the motion to remand, finding that the amendments were made in good faith. Id.

On appeal, the defendants relied on Brown to argue that the district court had abused its discretion when it allowed repeated motions to amend for the purpose of avoiding federal preemption and federal jurisdiction. Id. at 447-48. The Fourth Circuit disagreed, however, finding that "[a] careful reading of Brown does not appear to proscribe amendments to complaints which have the effect of eliminating federal claims." Id. at 448. Rather, Brown "merely stated that subject matter jurisdiction is not divested from the district court when the federal claims are dismissed from the complaint." Id. Therefore, because the district court had determined that the plaintiff had a substantive and meritorious reason to amend the complaint, in addition to her motive of defeating diversity, the Circuit Court found that it had not abused its discretion in allowing the amendments. Id.

The Fourth Circuit then concluded "the presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the

plaintiff's properly pleaded complaint without consideration of any potential defenses. Id. at 450 (citing Aetna Health, Inc. v. Davila, 542 U.S. 200, 207 (2004)). Because the plaintiff's amended complaint no longer alleged claims that were federally preempted, the district court had discretion, under Cohill, to remand the case to state court. See id. at 448, 450.

In light of the holdings in these later cases, Brown does not prevent this Court from granting either Henry's motion to amend her Complaint or her motion to remand, unless, of course, Henry's motion has been made in bad faith. See CSX Hotels, 389 F.3d at 448 ("Once the district court found the amendment to be made in good faith, the decision to remand to state court resided within the discretion of the trial court.").

### 2. Henry's Motion to Amend

In support of her motion to amend her Complaint, Henry argues that she never intended to bring a federal claim under ERISA, nor did she intend to allege that the defendants were motivated by a desire to deny her or her husband ERISA-covered benefits. She admits that Count Three may create confusion on this point, but asserts that she only intended Count Three to help reinforce the idea that she was discriminated against in part because of her and her husband's status as disabled. She further states that Count

Three is not essential to her case because the suit is intended to fall entirely under the WVHRA. Thus, she contends that eliminating Count Three would serve to simplify and clarify the relevant allegations. Finally, Henry points out that the case is still in an early stage; no scheduling order has issued, and allowing such amendment would not cause unreasonable delay or hardship.

In a similar case from the Southern District of West Virginia, Savilla v. Speedway SuperAmerica, LLP, 2004 WL 2359410 *2 (S.D.W. Va., August 25, 2004), when the defendant removed the case to federal court, the plaintiff sought to replace a federal constitutional claim with a state constitutional claim, arguing that she would receive stronger protection under the state claim. In considering the motion to amend, the district court stated that "[i]t would be naive to believe that forum manipulation is not a purpose for this amendment, however, it is not the primary purpose." Id. After noting that the case was still in its early stages, and that there had been no undue delay or prejudice, it granted the motion in consideration of the liberal amendment policy and the lack of prejudice. Id. at *2-3. Ultimately, it remanded the case to state court.

This Court does not doubt that, as were the motions filed by the plaintiffs in CSX Hotel and Savilla, Henry's motion to amend is

motivated in no small part by a desire to eliminate any basis for federal jurisdiction from her case. Nevertheless, the Court cannot find that her motion is made in bad faith. As she admits, Count Three is inartfully drafted; it does not directly state a claim that would fall under ERISA, but rather implies such. Although the Court has already found that the count, as drafted, is sufficient to invoke ERISA preemption, it is not unreasonable to conclude that Henry never intended to state such a claim. Moreover, it is understandable that her attorney, perhaps unfamiliar with how ERISA cases are litigated, would want to limit the scope of the case to avoid the claim. Accordingly, the Court **GRANTS** Henry's motion to amend, finds it was made in good faith, and **ORDERS** the Amended Complaint to be deemed filed.

    **C.**    **Motion to Remand**

Because the Amended Complaint does not include a federal claim, and diversity does not exist between these parties, the Court has broad discretion to determine whether it should keep the state law claims under the doctrine of supplemental, formerly pendent, jurisdiction. <u>Cohill</u>, 484 U.S. at 357. Under section 1367(c) of Title 28 of the United States Code, a district court may

decline to exercise supplemental jurisdiction over state law claims if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) <u>the district court has dismissed all claims over which it has original jurisdiction</u>, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Furthermore, when a court is considering whether to remand state law claims, it should also consider the principles of economy, convenience, fairness and comity. <u>Cohill</u>, 484 U.S. at 357.

Here, because the claim over which the Court had original jurisdiction has been eliminated, the Court may properly decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). Additionally, this action is still in its earliest stage; no trial or pretrial dates have been scheduled, nor has discovery commenced. Moreover, because the claims remaining in this case arise solely under West Virginia law, the principles of economy, convenience, fairness and comity favor remand. Indeed, should novel questions of state law under the WVHRA arise in this case, West Virginia courts certainly will be better positioned to answer them.

Thus, as the United States Supreme Court recognized in <u>Cohill</u>, "[w]hen the single federal-law claim in the action was eliminated at an early state of the litigation, the District Court had a

powerful reason to choose not to continue to exercise jurisdiction." 484 U.S. at 351. For similar reasons, remand is appropriate here, and the Court **GRANTS** Henry's motion to remand.

### III. CONCLUSION

For the reasons stated, the Court **GRANTS** Henry's motion to amend her Complaint (dkt. no. 23), **ORDERS** the Amended Complaint to be deemed filed (attached as Exhibit A to dkt. no. 23), and **GRANTS** the motion to remand (dkt. no. 21). The case, therefore, is **REMANDED** to the Circuit Court of Monongalia County, West Virginia.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATE: December 24, 2008

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE